2005 ND 59

**STATE of North Dakota, Plaintiff and Appellee**

v.

**Randy NELSON, Defendant and Appellant.**

No. 20040284.

Supreme Court of North Dakota.

March 23, 2005.

James M. Vukelic (on brief), Assistant State's Attorney, Bismarck, N.D., for plaintiff and appellee.

Todd A. Schwarz (on brief), Bismarck, N.D., for defendant and appellant.

KAPSNER, Justice.

[¶ 1] Randy Nelson appealed ·from a judgment of conviction, upon jury verdict, for manufacture of methamphetamine, a class A felony; possession of methamphetamine, a class C felony; possession of methamphetamine paraphernalia, a class C felony; and fleeing from a law enforcement officer, a class B misdemeanor. On appeal, Nelson asserts the trial court erred in denying his motion to suppress. We hold there was not probable cause to support the warrant to search Nelson's home, and we reverse Nelson's conviction and remand for entry of an order granting the motion to suppress.

I

[¶ 2] A warrant was issued to search Nelson's home for contraband and drug paraphernalia, based upon an affidavit of Special Agent Todd DeBoer of the Bureau of Criminal Investigation. As a result of the search, law enforcement officers found drugs and drug paraphernalia ultimately resulting in Nelson's conviction on the drug-related charges brought against him. On appeal, Nelson asserts DeBoer's affidavit in support of the request for the search warrant contained false and inaccurate information which, if eliminated from the affidavit, would leave inadequate factual allegations to support a finding of probable cause for issuance of the search warrant. Nelson asserts the evidence obtained as a result of the search warrant should be suppressed and his conviction on the drug-related charges reversed.

II

[¶ 3] The Fourth Amendment of the United States Constitution, made applicable to the states by the Fourteenth Amendment, and Art. I, § 8 of the North Dakota Constitution require searches and seizures to be reasonable and warrants to

be issued only upon a showing of probable cause. *State v. Ballweg*, 2003 ND 153, ¶ 11, 670 N.W.2d 490. The existence of probable cause to issue a search warrant is a question of law. *Id.* Probable cause to search exists " 'if the facts and circumstances relied on by the magistrate would warrant a person of reasonable caution to believe the contraband or evidence sought probably will be found in the place to be searched.' " *State v. Corum*, 2003 ND 89, ¶ 22, 663 N.W.2d 151 (quoting *State v. Guthmiller*, 2002 ND 116, ¶¶ 10–11, 646 N.W.2d 724). Probable cause to search does not require the same standard of proof necessary to establish guilt at a trial; rather, probable cause to search exists if it is established that certain identifiable objects are probably connected with criminal activity and are probably to be found at the present time at an identifiable place. *State v. Damron*, 1998 ND 71, ¶ 6, 575 N.W.2d 912. All of the information presented to establish probable cause should be taken together, not analyzed in a piecemeal fashion, and the magistrate is to make a practical commonsense decision whether probable cause exists to search that particular place. *Id.*

[¶ 4] When the defendant alleges false or misleading statements have been made in the application for a search warrant, we address the issue under the standard set forth by the United States Supreme Court in *Franks v. Delaware*, 438 U.S. 154, 155–56, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978):

> [W]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request. In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit.

Under *Franks,* if the defendant makes a substantial preliminary showing to justify an evidentiary hearing, the defendant has the burden at that hearing to prove, by a preponderance of the evidence, false statements in the warrant affidavit were made intentionally or with reckless disregard for the truth. *State v. Schmitt,* 2001 ND 57, ¶ 11, 623 N.W.2d 409. A false statement under *Franks* is one that misleads the neutral and detached magistrate into believing the stated facts exist, and those facts in turn affect the magistrate's evaluation of whether there is probable cause. *State v. Duchene,* 2001 ND 66, ¶ 8, 624 N.W.2d 668. The determination whether false statements in a warrant affidavit were made intentionally or with reckless disregard for the truth is a finding of fact reviewed under the clearly erroneous standard. *Schmitt,* 2001 ND 57, ¶ 11, 623 N.W.2d 409. A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if there is no evidence to support it, or if, although there is some evidence to support it, on the entire evidence, we are left with a definite and firm conviction a mistake has been made. *Id.* at ¶ 12.

### III

[¶ 5] On appeal, Nelson asserts there were numerous false or misleading statements in Special Agent DeBoer's affidavit in support of the request for a search

warrant which, if set aside, would leave inadequate factual allegations to support a finding of probable cause for issuance of the search warrant.

### A

██ [¶ 6] DeBoer's affidavit states "a reliable informant provided Elgin Police Chief, Roger Riedlinger with" information about Randy and Monte Nelson carrying marijuana plants into Monte Nelson's residence. Nelson asserts the affidavit does not identify the informants or show how the information is reliable. A confidential informant is known to the police officer, but his or her identity is concealed from the magistrate. *State v. Roth*, 2004 ND 23, ¶ 11, 674 N.W.2d 495. A higher degree of reliability attaches to a confidential informant than to an anonymous informant. *Id.* at ¶ 13. Nevertheless, the trial court indicated in its order following the suppression hearing that it did not rely on this information in issuing the search warrant, stating "the fact that these items were brought into the defendant's brother's house does not make it probable that something illegal would be found at the defendant's house."

### B

[¶ 7] In his affidavit, DeBoer states a concerned citizen, known to Sheriff Steven Bay, advised the sheriff he had noticed a lot of suspicious activity in the outbuildings and grain building located at Randy Nelson's residence. On appeal, Nelson objects that the affidavit failed to explain what was the suspicious activity from which one could infer a possible connection of criminal activity by Randy Nelson. In his order following the suppression hearing, the judge indicated he afforded no weight to this information in issuing the search warrant:

A "concerned citizen" noticed "suspicious activity" near the outbuildings on the defendant's property. No information is provided as to the reliability of the "concerned citizen," nor is there any elaboration on why the "suspicious activity" is suspicious, except that it occurred late at night and early in the morning. Without more detail, this information adds nothing.

### C

[¶ 8] DeBoer's affidavit states on numerous occasions Randy and Monte Nelson purchased substantial quantities of pseudoephedrine, lithium batteries, heat lamps, and light bulbs. The affidavit states that on April 8, 2003, Randy purchased 20 boxes of pseudoephedrine from a business in Elgin, and Monte purchased 25 boxes of pseudoephedrine from the same business; that on April 22, 2003, Randy purchased two packs of lithium batteries from a business in Carson; that on May 2, 2003, Randy purchased seven to eight lithium battery packs at stores in Carson and New Leipzig; and that on May 10, 2003 Randy purchased two boxes of pseudoephedrine from a business in Elgin.

[¶ 9] At the suppression hearing Charles Oien, the owner of the Economy Drug Store in Elgin, testified that altogether Randy purchased between 20 and 25 boxes of pseudoephedrine. Although he was unable to specifically pinpoint each date of purchase, he testified Randy and Monte Nelson purchased substantial quantities of pseudoephedrine during the winter and spring of 2003. Although this evidence shows some details of DeBoer's affidavit may have been inaccurate, it falls short of demonstrating the allegations in DeBoer's affidavit about the dates of pseudoephedrine purchases were intentionally false or issued in reckless disregard of the truth.

[¶ 10] The trial court found these purchase activities very relevant to establishing probable cause to justify issuance of the search warrant:

> The Court is left with whether purchases of large quantities of pseudoephedrine, lithium batteries, and heat lamps and light bulbs is enough to provide probable cause for the issuance of the warrant. The Court finds that the purchase of the quantity and combination of the items is enough to provide probable cause to search for evidence of the manufacture of methamphetamine. The officer's experience with those items tells him that the items will probably be used to make methamphetamine.

[¶ 11] In the affidavit, DeBoer states that, in his experience as a law officer since 1993, with seven years as an employee of the North Dakota Bureau of Criminal Investigation, lithium batteries, pseudoephedrine, anhydrous ammonia, heat lamps, and light bulbs are all used in the manufacture of methamphetamine. *See State v. Corum*, 2003 ND 89, ¶ 4, 663 N.W.2d 151. The suppression hearing testimony demonstrates DeBoer had a substantial basis for the affidavit allegations that Randy and Monte Nelson had purchased items likely to be used to manufacture methamphetamine.

### D

[¶ 12] DeBoer's affidavit stated a taped recording of two individuals stealing anhydrous ammonia from a tank in Hettinger County on April 28, 2003, showed the suspects used a red Geo Metro vehicle and law officers identified Randy Nelson as the driver of the vehicle and his brother, Monte Nelson, as the passenger in the vehicle. Randy Nelson asserts that was a false statement, because the officers had not identified him as the driver of the vehicle.

[¶ 13] Roger Riedlinger, the Elgin Chief of Police, testified at the suppression hearing that he viewed the tape of the anhydrous ammonia theft and was able to identify Monte Nelson as the passenger in the Geo Metro, which he believed was owned by Randy Nelson. He testified he was unable to identify Randy in the taped video as the driver, but he believed Randy was probably driving the vehicle, because it was Randy's vehicle and during the past two years the only person the officer had ever seen driving that car was Randy. Steven Bay, the Grant County Sheriff, also testified at the suppression hearing that Randy Nelson had not been identified in the suspect tape as the driver of the red Geo Metro. However, he also testified that at the time the warrant was issued he believed the vehicle was owned by Randy or his wife, Joyce Nelson, or both, and that Randy was likely the driver of the vehicle, where his brother was positively identified as the passenger. Todd DeBoer also testified at the suppression hearing. He said his field notes in investigating these crimes indicated Chief Deputy Darwin Roth had identified Monte Nelson as the passenger in the vehicle and had also identified Randy Nelson as the driver of the vehicle.

[¶ 14] The trial court, in its order denying the motion to suppress, found DeBoer's statement that Randy Nelson had been identified as the driver of the vehicle was not accurate:

> [S]everal law enforcement witnesses testified as to their knowledge that the car was owned by the defendant and driven exclusively by the defendant, therefore the witnesses believed the defendant was driving the car on the videotape. First, the officer's [sic] opinions, while possibly correct, are not objective evidence, they are merely opinions. Second, and more important, the affiant provided none of this information to the

judge who issued the warrant.... What is left is an inaccurate statement that the Court relied on in issuing the warrant. This statement must be redacted. By setting it aside, the trial court impliedly found the affidavit statement, that Randy Nelson had been identified as the driver of the suspect vehicle, was intentionally false or made with reckless disregard for the truth. That finding is not clearly erroneous.

[¶ 15] While the investigating officers were unable to unconditionally identify Randy as the driver of the vehicle, they told Special Agent DeBoer they believed Randy was the driver of the vehicle, because the vehicle was owned by him, they had only seen Randy driving that vehicle in the past, and they were able to positively identify Randy's brother as the vehicle passenger. The court must take into account inferences and deductions that a trained experienced officer makes. *State v. Guthmiller,* 2002 ND 116, ¶ 15, 646 N.W.2d 724. However, none of this additional information was provided in the affidavit to support the request for the warrant.

## IV

[¶ 16] In denying the motion to suppress, the trial court concluded DeBoer's affidavit contained sufficient reliable information to support a finding of probable cause that officers would find contraband at the place to be searched. On appeal, we use the totality-of-the-circumstances test to review the sufficiency of the information before the magistrate independent of the court's decision. *State v. Rydberg,* 519 N.W.2d 306, 308 (N.D. 1994). The magistrate is to make a practical, commonsense decision whether probable cause exists to search that particular place. *State v. Damron,* 1998 ND 71, ¶ 6, 575 N.W.2d 912. We generally defer to a magistrate's determination of probable cause, and will not disturb a magistrate's conclusion that probable cause exists if there is a substantial basis for the conclusion. *Id.*

[¶ 17] To establish probable cause for a search, there must be a nexus between the place to be searched and the contraband sought, and circumstantial evidence may be enough to establish the nexus. *See State v. Dodson,* 2003 ND 187, ¶¶ 11–12, 671 N.W.2d 825. In *Dodson,* the warrant-seeking affidavit stated that a car being used by Parker, a person suspected of being involved with methamphetamine production, was spotted by police at the following three locations on the same day: first, the car was used to purchase sulfuric acid (which can be used in the production of methamphetamine); second, the car was parked outside a home where drug-making paraphernalia was found in the trash; and third, the car was parked at Dodson's home. This Court concluded that evidence of criminal activity at the first home Parker visited would not lead a person of reasonable caution to believe that contraband would be found at the second home Parker visited. *Id.*

[¶ 18] The factual situation presented to the magistrate in this case provides an even weaker nexus between the place to be searched and the contraband sought. Although Randy Nelson's brother was identified at the scene of a theft of anhydrous ammonia in a red Geo Metro, Randy Nelson was not identified as a suspect at the scene. There was no evidence presented in the affidavit supporting the search warrant that the car in the video was owned by Randy Nelson or that officers had only seen Randy Nelson driving that car in the past. The affidavit states that the license plate on the car seen in the video was not visible. There is no evidence in the affidavit that the license plate

number on the car at the residence of Randy Nelson had been checked or that the car belonged to Randy Nelson. The affidavit only notes that a car that looks like the same unidentified car used in the theft was observed at Randy Nelson's home at a later date.

[¶ 19] If one sets aside those facts in the affidavit which the trial court found to be inaccurate or of no value in establishing probable cause, the affidavit contained the following relevant information to establish probable cause to issue the warrant:

(1) After the date of the anhydrous ammonia theft, a red Geo Metro was observed at Randy Nelson's residence.

(2) Randy and Monte Nelson purchased considerable quantities of pseudoephedrine, lithium batteries, heat lamps, and light bulbs and those items are used in the manufacture of methamphetamine.

(3) Both Randy and Monte Nelson have criminal records, and Monte Nelson's record includes numerous incidents of drug offenses.

The trial court concluded:

The Court is left with whether purchases of large quantities of pseudoephedrine, lithium batteries, and heat lamps and light bulbs is enough to provide probable cause for the issuance of the warrant. The Court finds that the purchase of the quantity and combination of the items is enough to provide probable cause to search for evidence of the manufacture of methamphetamine.

Although this Court has said that "simultaneous purchase of innocent items can become suspicious under circumstances indicating the items will be used to manufacture drugs," *Dodson*, 2003 ND 187, ¶ 17, 671 N.W.2d 825, the information provided in the affidavit must be sufficient to establish probable cause to believe contraband will be found in the place to be searched. Mere suspicion that criminal activity is taking place which may warrant further investigation does not rise to a level of probable cause to search. *State v. Thieling*, 2000 ND 106, ¶ 8, 611 N.W.2d 861. Under the circumstances of this case, we conclude the affidavit, after omitting the false and misleading statements in it, does not contain sufficient facts which would warrant a person of reasonable caution to believe contraband would probably be found at Randy Nelson's residence. The purchase of considerable quantities of pseudoephedrine, lithium batteries, heat lamps, and light bulbs, without more, is simply inadequate to establish a sufficient nexus between the place to be searched, Randy Nelson's residence, and the contraband sought to be found.

## V

[¶ 20] We conclude, under the totality of the circumstances, DeBoer's affidavit did not contain sufficient reliable information to warrant a person of reasonable caution to believe contraband or other evidence sought would probably be found at Randy Nelson's residence. The search of Nelson's home was therefore illegal under the federal and state constitutions, and the evidence seized as a result of the search should have been suppressed. We, therefore, conclude the trial court erred in denying the motion to suppress, and we reverse Nelson's conviction and remand for entry of an order granting the motion to suppress.

[¶ 21] GERALD W. VANDE WALLE, C.J., and MARY MUEHLEN MARING, J., concur.

I concur in the result

DALE V. SANDSTROM.

[¶ 22] The Honorable WILLIAM A. NEUMANN, a member of the Court when this case was heard, resigned effective March 14, 2005, and did not participate in this decision.