2006 ND 138

**STATE of North Dakota, Plaintiff and Appellee**

v.

**Jason Wayne OIEN, Defendant and Appellant.**

**No. 20050451.**

Supreme Court of North Dakota.

June 29, 2006.

Tracy Jo Peters (argued) Assistant State's Attorney, and Renata Selzer (on brief), third-year law student, Fargo, N.D., for plaintiff and appellee.

Mark Anthony Beauchene, Fargo, N.D., for defendant and appellant.

VANDE WALLE, Chief Justice.

[¶ 1] Jason Oien appealed his conviction for possession of a controlled substance with intent to deliver and possession of drug paraphernalia, entered upon a conditional plea of guilty after the district court denied his motion to suppress. We affirm, concluding Oien did not have a reasonable expectation of privacy in the premises searched, and therefore may not challenge the search that led to his arrest.

I

[¶ 2] Sarah Jones, Oien's girlfriend, was renting an apartment from the Housing Authority of Cass County. In March 2005, police were called to Jones' apartment after Jones and Oien were involved in a domestic dispute. As a result of this incident, Vicki Heilman, the property manager for the Housing Authority, sent the West Fargo Police Department a "no trespass" order indicating Oien was not allowed on Housing Authority property, including Jones' apartment. Heilman testified at the suppression hearing that Jones' lease contained a provision allowing the Housing Authority to exclude individuals from the property, and failure to comply with the provision could result in termination of the lease. Heilman gave Jones verbal and written notice Oien was not allowed on the property. Heilman sent a copy of the written notice to Oien at his mother's residence. At the suppression hearing, Jones testified Oien would stay at his mother's residence or with friends when he did not stay with her. Jones also testified she did not inform Oien he was not allowed on Housing Authority property because she wanted him to continue to come to her apartment.

[¶ 3] On June 20, 2005, Heilman received an anonymous tip that Oien was in Jones' apartment. Heilman contacted the West Fargo Police Department and asked an officer to accompany her to the apartment because she was afraid Oien might become violent. Two officers accompanied Heilman to Jones' apartment. Upon arriving at the apartment, Heilman knocked on the back door and spoke to an individual doing repair work in the kitchen. The individual told Heilman to go around to the other door, but Heilman entered through the back door with one of the officers. Heilman called Jones' name and Jones appeared at the top of the stairs on the second floor of the apartment. Heilman asked Jones if Oien was in the apartment. Initially Jones said no, but when she was asked again, she hesitated when answering. Twice Heilman asked Jones if they could search the apartment for Oien, and Jones said no both times. Heilman asked to search the apartment a third time and advised Jones she would be evicted if she did not allow them to search. Jones then consented to the search.

[¶ 4] Heilman and the officer searched the upstairs area of the apartment. In a

second bedroom, the officer moved a mattress blocking the entry of a closet and found Oien hiding in the closet. Oien was ordered out of the closet and was searched for weapons. The officer noticed the smell of marijuana, looked in the closet, and saw a metal cake pan containing marijuana.

[¶ 5] Oien was arrested and charged with possession of a controlled substance with intent to deliver and possession of drug paraphernalia. Oien moved to suppress all of the evidence, arguing the entry and search of Jones' apartment were illegal because the police did not have a search warrant to enter the premises and the exceptions to the warrant requirement were not applicable. The district court denied Oien's motion, finding Oien did not have standing to challenge the entry and search because he was trespassing, and finding the officers were performing a caretaking function. Oien conditionally plead guilty, reserving the right to appeal the denial of his motion to suppress.

## II

[¶ 6] Oien argues the entry and search of Jones' apartment were in violation of the Fourth Amendment, and the district court erred in finding he did not have standing to challenge the entry and search of the residence because he was trespassing. Oien argues he was an overnight guest in Jones' apartment, and therefore is entitled to the protections of the Fourth Amendment.

[¶ 7] Our standard for reviewing a district court's decision on a motion to suppress is well established:

We will defer to the [district] court's findings of fact in the disposition of a motion to suppress. Conflicts in testimony will be resolved in favor of affirmance, as we recognize the [district] court is in a superior position to assess credibility of witnesses and weigh the evidence. Generally, a [district] court's decision to deny a motion to suppress will not be reversed if there is sufficient competent evidence capable of supporting the [district] court's findings, and if its decision is not contrary to the manifest weight of the evidence.

State v. Linghor, 2004 ND 224, ¶ 3, 690 N.W.2d 201 (quoting State v. Kitchen, 1997 ND 241, ¶ 11, 572 N.W.2d 106).

[¶ 8] The Fourth Amendment to the United States Constitution, applicable to the states through the Fourteenth Amendment, and Article 1, § 8 of the North Dakota Constitution protect individuals from unreasonable searches and seizures. Generally, evidence illegally seized in violation of the Fourth Amendment must be suppressed under the exclusionary rule. See State v. Utvick, 2004 ND 36, ¶ 26, 675 N.W.2d 387. But see Hudson v. Michigan, — U.S. —, 126 S.Ct. 2159, — L.Ed.2d — (2006). An individual is only entitled to the protection of the exclusionary rule if the individual's own Fourth Amendment rights were violated and not the rights of a third party. State v. Benjamin, 417 N.W.2d 838, 839 (N.D.1988). In Rakas v. Illinois, 439 U.S. 128, 140, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978), the United States Supreme Court ended the reliance on "standing" to ascertain whether an individual is entitled to claim the protections of the exclusionary rule, and concluded the proper inquiry is whether "the disputed search and seizure has infringed an interest of the defendant which the Fourth Amendment was designed to protect." See also State v. Huether, 453 N.W.2d 778, 780 n. 1 (N.D.1990). The "capacity to claim the protection of the Fourth Amendment depends ... upon whether the person who claims the protection of the Amendment has a [reasonable] expectation of privacy in the invaded place." Rakas, at 143, 99 S.Ct. 421. Although the court

no longer makes a determination of whether an individual has "standing" in the traditional sense, the term continues to be used to refer to the concept of "reasonable expectation of privacy." *Huether,* at 780 n. 1.

[¶ 9] A Fourth Amendment search does not occur unless the government violates an individual's subjective expectation of privacy that society has recognized as reasonable. *Kyllo v. United States,* 533 U.S. 27, 33, 121 S.Ct. 2038, 150 L.Ed.2d 94 (2001). This Court has recognized that a guest generally has a reasonable expectation of privacy in a host's home. *State v. Ackerman,* 499 N.W.2d 882, 885 (N.D.1993). Although a guest generally has a reasonable expectation of privacy in the premises, someone who is trespassing or has been legitimately expelled from the premises searched does not have an expectation of privacy that society recognizes as reasonable. *See Rakas,* 439 U.S. at 143 n. 12, 99 S.Ct. 421 (burglar may have subjective expectation of privacy, but it is not reasonable because presence is wrongful); *United States v. Rambo,* 789 F.2d 1289, 1295–6 (8th Cir. 1986) (no expectation of privacy in a place the individual has been justifiably expelled from); *Thomas v. State,* 274 Ga. 156, 549 S.E.2d 359, 366 (2001) (defendants, who sublet a townhouse, had no expectation of privacy after landlord gave them notice that they were trespassing); *Commonwealth v. Morrison,* 429 Mass. 511, 710 N.E.2d 584, 586 (1999) (no expectation of privacy because order for protection forbid presence in place searched). It would be irrational to say that society recognizes as reasonable an individual's subjective expectation of being free from police intrusion upon his privacy in a place after he has been legitimately excluded from that place. *Rambo,* at 1296.

[¶ 10] Although Oien claims he was an overnight guest in Jones' apartment, and therefore had a reasonable expectation of privacy, the district court found Oien was trespassing:

The Court, first of all, is going to make a finding specifically that it's not plausible that [Oien] did not know that he was not to be on the property. The Court has in front of it, State's Exhibit # 1, which was given to Ms. Jones on March 1, 2005. She was actually served with it, and this alleged violation occurred on or about June 20, 2005. It is uncontroverted that a copy was sent to his mother's place, which according to this witness, he resides sometimes. I think that the landlord did what she could in order to make sure that [Oien] knew he was not to be on that property, as her lease allows her to do.

Her information was that he was in the property, she called the West Fargo Police, which was apparently not unusual, but in this particular case, because she knew of his violent propensities, I think she was taking precautions. Went to the home to investigate, they followed her.... As it turns out, what there was in the closet was [Oien], crouching down, which again does underscore my belief that he knew he wasn't supposed to be there....

But I don't believe a trespasser who knows he's trespassing has standing to object to a landlord search, and that further, she was accompanied by police officers for her own protection.

[¶ 11] Whether Oien was trespassing is a question of fact. *See State v. Bertram,* 2006 ND 10, ¶ 7, 708 N.W.2d 913 (knowledge element of criminal trespass statute is a question of fact). We defer to the district court's findings of fact unless the findings are clearly erroneous. *Huether,* 453 N.W.2d at 781. A finding of fact is

clearly erroneous when it is induced by an erroneous view of the law, when there is no evidence to support it, or if, although there is some evidence to support it, on the entire evidence, the court is left with a definite and firm conviction that a mistake has been made. *State v. Nelson*, 2005 ND 59, ¶ 4, 693 N.W.2d 910.

[¶ 12] The district court found the terms of Jones' lease allowed the landlord to exclude Jones' guests from the property, and Heilman issued and sent Oien notice of the "no trespass" order forbidding Oien from being on Housing Authority property. The court found Oien knew he was not allowed on the property and knew he was trespassing. The court could infer Oien's knowledge based upon the evidence presented, including Heilman's testimony that she gave Jones verbal and written notice Oien was not allowed on the property; Heilman sent a letter to Oien's mother's residence, where Oien often stays, informing him that he was not allowed on Housing Authority property; and the officer found Oien hiding in a closet, which the court concluded Oien would not do unless he knew he was not allowed on the property. After considering the evidence, the court found it was implausible Oien did not know he was not allowed on the property, and therefore Oien did not have a reasonable expectation of privacy.

[¶ 13] The district court's findings are supported by the evidence and are not clearly erroneous. Although Oien may have been an overnight guest, we conclude he is not entitled to the Fourth Amendment protections because he did not have a reasonable expectation of privacy in Jones' apartment after he became aware the landlord legitimately forbid him from being on Housing Authority property.

III

[¶ 14] We conclude the district court did not err in denying Oien's motion to suppress. We have considered the remaining issues and arguments raised by the parties, and conclude it is unnecessary to address those issues. We affirm Oien's conviction.

[¶ 15] DALE V. SANDSTROM, DANIEL J. CROTHERS, MARY MUEHLEN MARING, and CAROL RONNING KAPSNER, JJ., concur.